UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CITY WIDE PAVING, INC., | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | 1:11-cv-0559-JMS-DKL |
| | ) | |
| M & I MARSHALL & ISLEY | ) | |
| BANK, | ) | |
|     *Defendant*. | ) | |
| | ) | |

**ORDER ON MOTION TO DISMISS**

This case is before the Court, after removal from the Marion County Superior Court, on a Motion to Dismiss filed by Defendant M&I Marshall & Isley Bank ("M&I Bank"). M&I Bank moves the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that each of the twelve counts of Plaintiff City Wide Paving's ("CWP") Complaint fails to state a claim upon which relief may be granted. For the reasons expressed in this entry, the Court finds that the motion is well taken with respect to all counts, except the negligence claim (Count III).

**I.**
**BACKGROUND**

The Complaint pleads the following facts: Eddy Brownewell worked for CWP between November 14, 2006 and September 25, 2009. He was responsible for a variety of tasks, including customer interaction, collection of payments, and the making of bank deposits. Without authorization from CWP, Brownewell opened an account with M&I Bank in his own name and added "City Wide Paving" to the account as a d/b/a. According to the records attached to the Complaint, beginning early in 2008 Brownewell deposited checks made out to City Wide Paving, Inc. into the account he established with M&I Bank by stamping "For Deposit Only" on the

reverse of the checks or having the bank stamp them similarly. He did this nineteen times, the total of the deposits equaling $83,563.50. He later remitted amounts to CWP to cover some of the checks he had deposited to his account, but he only paid CWP $46,107.00.

CWP did not have any accounts with M&I Bank and M&I Bank did nothing to verify that Brownewell operated a business known as CWP or to verify that he had any relationship with CWP. None of the nineteen checks included Brownewell's name as a payee. CWP has been unable to recover the balance of the amount embezzled by Brownewell and not subsequently remitted.

CWP sued M&I Bank in state court and the suit was removed to this Court on the basis of diversity jurisdiction. The Complaint alleges abuse of process, conversion, negligence, and nine counts of tortious interference with a business relationship - one for each of the entities that wrote checks which Brownewell deposited at M&I Bank. Indiana law applies.

## II.
### STANDARD OF REVIEW OF RULE 12(B)(6) MOTION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim only has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id*. In considering these issues, the Court accepts all well-pled facts as true, draws all inferences in favor of the plaintiff, and resolves all ambiguities in favor of the plaintiff. *Rennell v. Rowe*, 1635.3d 1008, 1010 (7th Cir.2011). However, a plaintiff's complaint must contain more than labels and conclusions or a formulaic recitation of the elements of the

cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## III.
### DISCUSSION

A. <u>Abuse of Process</u>. Abuse of process is a claim based on the illegitimate use of the judicial process. *See Kalwitz v. Kalwitz,* 934 N.E.2d 741 (Ind. Ct. App. 2010); *Reichhart v. City of New Haven*, 674 N.E.2d 27, 32 (Ind. Ct. App. 1996). There are no allegations in the Complaint regarding the use of the judicial process by any party. CWP apparently grasped the frivolousness of this claim after M&I Bank filed its Motion to Dismiss, as the Plaintiff offered no response to the argument made by the bank for dismissing that claim. Accordingly, the abuse of process claim is dismissed.

B. <u>Criminal Conversion</u>. Count II of CWP's Complaint alleges a claim of conversion "as defined in IC-35-43." The text of Indiana Code § 35-43-4-3 provides:

> (a) A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor.

If someone suffers a pecuniary loss as a result of a violation of Indiana Code § 35-43-4-3, that person may bring a civil action and, pursuant to Indiana Code § 34-24-3-1, would be entitled to recover treble damages. Recovery on this theory in a civil action does not require a criminal conviction. *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind. Ct. App. 1995). Instead, the "claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant." *Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 420 (Ind. Ct. App. 1997).

A *mens rea* element is included in the proof necessary to establish criminal conversion.[1] *Smeigh v. Johns Manville, Inc.*, __F.3d __; 2011 WL 2555819, *8 (7th Cir. June 29, 2011); *Manzon v. Stant Corp.*, 138 F.Supp.2d 1110, 1116 (S.D. Ind. 2001). It must be shown that the Defendant was aware of a high probability that the control exerted over the subject property was unauthorized. *Id*. This high burden must be met because Indiana Code § 34-24-3-1 is a punitive statute and subject to strict construction under Indiana law. *Manzon,* 138 F.Supp.2d at 1116 (citing *NationsCredit Commercial Corp. v. Grauel Enterprises,* Inc., 703 N.E.2d 1072, 1078 (Ind. Ct. App. 1998)). In this instance, CWP has pled no facts which would tend to support any such unauthorized control on the part of M&I Bank. As *Twombly* teaches, the mere recitation of an element of the claim, which is all CWP did in paragraph 24 of the Complaint, is insufficient to meet the pleading requirements necessary to survive a motion to dismiss. *Twombly*, 127 S.Ct. at 1964–65. Accordingly, Plaintiff's conversion claim is also dismissed.

    C. <u>Tortious Interference with a Business Relationship</u>. The nine claims for tortious interference with a business relationship fare no better. The elements of a claim for tortious interference with a business relationship include: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of that relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship. *Columbus Medical Services*

---

[1] CWP argues in its response brief that no intent or particular state of mind is necessary for a claim of "tortious conversion" under Indiana law. Whether that is an accurate statement of the law with regard to tortious conversion is irrelevant, because CWP specifically pled criminal conversion in Count II of its Complaint and asked for the treble damages which accompany a successful civil prosecution of a claim for criminal conversion. In colloquial terms, "what you plead is what you get." The Court is bound to accept the accuracy of a plaintiff's pleading even if it means that the plaintiff has pled himself out of court. *Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994).

*Organization, LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 94 (Ind. Ct. App. 2009). The nine counts in CWP's Complaint that assert a claim for tortious interference with a business relationship simply parrot the elements of the claim.

For example, after a boilerplate incorporation paragraph, Count IV of the Complaint contains the following allegations:

> 39. Prior to and during the Subject Period, CWP had a business relationship with Bowen engineering Corporation. ([T]he "Bowen Relationship").
>
> 40. M&I was aware of the Bowen Relationship.
>
> 41. M&I, by depositing a check issued by Bowen Engineering Corporation and payable to CWP intentionally interfered with the Bowen Relationship.
>
> 42. M&I failed to comply with the requirements of Title 12 § 229.38 by failing to comply with the customer verification requirements of 31 C.F.R. § 103.121
>
> 43. M&I's interference was not justified.
>
> 44. CWP's relationship with Bowen Engineering Corporation has been damaged as a result of M&I's action.

[Dkt. 1-1 at 7.] No other facts are alleged in Count IV and no facts are contained in the incorporated paragraphs which would provide factual support or plausibility to the rhetorical statements cited above.[2]

Finally, what separates this tort from many others is the requirement that some independent illegal action be engaged in by the defendant. *See Government Payment Service, Inc. v. Ace*

---

[2] CWP's reference to "Title 12 § 229.38" in paragraph 42 (which also appears in each of the nine counts of tortious interference) is indecipherable. No such section exists in the U.S. Code or the Indiana Code. Further, the section of the Code of Federal Regulations which is also referenced in each of the nine counts, 31 C.F.R. § 103.121, is a guideline for banks to follow in combating money laundering violations, which regulation was part of the Treasury's regulatory response to the passing of the USA Patriot Act. Failure to follow the guideline may be evidence of negligence on the part of a bank; the regulation is not intended to provide a private cause of action on behalf of a payee of a check who was the victim of its own employee's fraudulent actions.

*Bail Bonds*, 854 N.E.2d 1205, 1209 (Ind. Ct. App. 2006).  That is not the case here.  Not many of the facts seem to be disputed and what Plaintiff has described in its Complaint simply does not amount to illegal activity and is not the type of circumstance that this tort was intended to remedy.  The nine counts alleging tortious interference with a business relationship fail to state a claim.

      D.  <u>Negligence.</u>  That leaves the claim of negligence and this Court's astonishment that in the briefing on Defendant's Motion to Dismiss neither party cited or discussed a recent decision from the Indiana Supreme Court, *Auto-Owners Ins. Co. v. Bank One*, 879 N.E.2d 1086 (Ind. 2008).  In *Auto-Owners*, an insurance company sued a bank for negligently accepting checks made out to the insurance company and depositing them into an account opened by one of the company's employees, Kenneth Wulf.  The insurance company claimed that the bank violated Section 405 of the Indiana Uniform Commercial Code when it failed to exercise ordinary care in opening an account for Wulf in the name of "Auto-Owners, Kenneth B. Wulf" and later when it allowed Wulf to deposit into the account several checks made out to Auto-Owners which he had stamped "Auto-Owners Insurance Deposit Only."

      The applicability of the *Auto-Owners* decision to this case is obvious, and its omission from the parties' briefs confounding.  The fact pattern is strikingly similar. And given that the parties agree that this Court is to apply Indiana law, the decision of the highest court in the state on such a similar fact pattern is of critical importance.

      The Indiana Supreme Court addressed two questions in *Auto-Owners*: (1) Whether the bank was subject to an ordinary care requirement with respect to the act of opening an account for Wulf, and if so, (2) whether the bank's failure to exercise ordinary care substantially contributed to Auto-Owner's losses.  The court focused on a section from Indiana's Uniform Commer-

cial Code, Indiana Code § 26-1-3.1-405, as the centerpiece of the relevant legal discussion. *Auto-Owner's,* 867 N.E.2d at 1089. In pertinent part, that statute provides as follows:

> (b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the person bearing the loss proves that the failure to exercise ordinary care substantially contributed to the loss.
>
> (c) Under subsection (b), an endorsement is made in the name of the person to whom an instrument is payable if:
>   (1) it is made in a name substantially similar to the name of that person; or
>   (2) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

Ind. Code § 26-1-3.1-405.

At the trial court level, the defendant bank in *Auto-Owner's* had been granted summary judgment, which was affirmed by the Indiana Court of Appeals. *Auto-Owner's,* 867 N.E.2d at 1088. In a 3-2 decision, the Indiana Supreme Court sustained the grant of summary judgment, determining that the bank did not have an independent duty of ordinary care in connection with the opening of an account and the bank's actions were "not a substantial factor" in bringing about the insurance company's losses.[3] However the court did not determine that a bank's actions in opening an account could never be relevant in assessing whether the bank had exercised

---

[3] The dissent was convinced that there remained a question of fact as to whether the circumstances surrounding the bank's allowing Wulf to open an account and deposit checks were such that the bank's conduct was so negligent as to constitute a substantial contribution to the insurance company's losses. *Auto-Owner's,* 867 N.E.2d at 1093-95.

ordinary care in accepting a check. In reaching its determination the court stated:

> As to the purpose behind the statute, the first comment to § 405 reveals, and the Court of Appeals also pointed out, that in the absence of a bank's negligence, § 405 shifts the responsibility for monitoring possibly wayward employees away from a bank and onto the employer. The rationale for this responsibility shift is that an employer is in a better position to select and supervise its employees than an outside bank. More relevant to the situation at hand, an employer is also better able to put in place measures to prevent fraud among its employees. *Auto-Owners Ins. Co.*, 852 N.E.2d at 612-13 (citing I.C. § 26-1-3.1-405 cmt. 1). *Accord* White & Summers, *supra*, § 19-4.
>
> This is not to say that the circumstances of opening an account could never play a role in whether a bank has used ordinary care in paying or taking a check. Auto-Owners calls attention to the fourth comment to § 405, which outlines a scenario in which an employee might open an account in the name of a prominent corporation and use the account to deposit instruments payable to the corporation. I.C. § 26-1-3.1-405 cmt. 4. By Auto-Owners's interpretation, comment four supports liability for Bank One because the comment countenances an employee doing what Wulf did-opening a bank account in his employer's name. However, the comment states that "[f]ailure to exercise ordinary care is to be determined in the context of all the facts relating to the bank's conduct with respect to the bank's collection of the check." *Id.* (emphasis added). This emphasis is consistent with the language of § 405(b), which stresses "ordinary care in paying or taking the instrument." Thus, while the manner of opening an account might be considered in the context of all the facts surrounding the paying or taking of a check, the manner of opening an account, by itself, is not a focus of the rule.

*Id.* at 1089-90.

What *Auto-Owner's* teaches for purposes of this case is that while CWP has a very tough case to make, in light of Section 405 of the Indiana Uniform Commercial Code, the negligence claim is plausible. The totality of circumstances surrounding M&I Bank's acceptance of the checks from Brownewell must be considered to determine the application of Section 405, and that consideration should not be given until all the relevant evidence has been made available and a part of the record. As M&I Bank noted in its brief, the Uniform Commercial Code is, generally, what guides a determination of a party's rights with respect to a negotiable instrument such as a check. However, the protections provided a bank by Section 405 in fending off a neg-

-8-

ligence claim may only be invoked after consideration of the factual record. For that reason, the Court concludes that CWP's negligence claim states a claim upon which relief may be granted.

## IV.
### CONCLUSION

For the reasons detailed herein, Defendant's Motion to Dismiss (Doc. #21) is **GRANTED IN PART** and all claims except Plaintiff's negligence claim are hereby **DISMISSED**. The motion is **DENIED IN PART** with respect to Count III. The case shall proceed on Count III of the Complaint only.

07/27/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Zachary Judson Eichel
EINTERZ & EINTERZ
zach@einterzlaw.com

Michael L. Einterz Jr.
EINTERZ & EINTERZ
michael@einterzlaw.com

Michael L. Einterz Sr.
EINTERZ & EINTERZ
mike@einterzlaw.com

Jonathan Richard Ingrisano
GODFREY & KAHN SC
jingrisano@gklaw.com

Curtis T. Jones
BOSE MCKINNEY & EVANS, LLP
cjones@boselaw.com

Vilda Samuel Laurin III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com

Brian Spahn
GODFREY & KAHN, S.C.
bspahn@gklaw.com